**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| REPUBLIC CAPITAL ACCESS, LLC<br>1119 Corobon Lane<br>Great Falls, VA, 22066<br><br>Plaintiff,<br><br>v.<br><br>MANUFACTURERS & TRADERS TRUST COMPANY d/b/a M&T BANK<br>345 Main Street<br>One M&T Plaza<br>Buffalo, NY 14203<br><br>Serve:<br><br>CORPORATION SERVICE COMPANY<br>100 Shockoe Slip Fl. 2<br>Richmond, VA, 23219 - 4100<br><br>Defendant. | ) | Civil Action No. ___________ |

**COMPLAINT**

Republic Capital Access, LLC, by undersigned counsel, hereby files this Complaint against Manufacturers & Traders Trust Company d/b/a M&T Bank, and in support thereof, state as follows:

PARTIES

1. Plaintiff Republic Capital Access, LLC ("Plaintiff" or "RCA"), is a Delaware Limited Liability Company registered to transact business in the Commonwealth of Virginia. RCA is a single member LLC, with its sole member domiciled in Arkansas.

2. Defendant Manufacturers Traders and Trust Company d/b/a M&T Bank

("Defendant" or "M&T Bank"), is a New York Banking Corporation registered to transact business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states (Arkansas on the one hand, and New York, on the other).

4. This Court has specific personal jurisdiction over M&T Bank pursuant to VA.CODE § 8.01-328.1, consistent with the Due Process Clause of the United States Constitution, because M&T Bank is registered to transact business, and regularly transacts business, in the Commonwealth of Virginia.

5. The United States District Court for the Eastern District of Virginia (Alexandria Division) is a proper venue pursuant to 28 U.S.C. § 1391 because it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred. Venue is further acknowledged by a written agreement between Plaintiff and Defendant to be proper in the Commonwealth of Virginia.

## STATEMENT OF FACTS

### RCA's Purchase of Receivables from Railhead, Inc.

6. On September 13, 2018, RCA entered into an Accounts Receivable Purchase Agreement Dated with Railhead, Inc. ("Railhead"), a Viginia Corporation.

7. Since 2018, Railhead has sold accounts receivable to RCA under that certain Accounts Receivable Purchase Agreement dated September 13, 2018, as amended by the First Amendment dated September 3, 2019, the Second Amendment dated October 4, 2021, and the

Third Amendment dated June 11, 2025 (as amended, the "ARPA"), collectively attached hereto as **Exhibit A**.

8. Under the ARPA, effective upon payment of the Initial Purchase Price, Railhead "absolutely sells, transfers and assigns" to RCA all of Railhead's right, title, and interest in each Purchased Receivable and any Related Security, and RCA "shall be the absolute owner" of each Purchased Receivable and any Related Security. *See* Ex. A (ARPA) at 12 (§ 2.4) (capitalized terms as defined in the ARPA).

9. The ARPA defines "Related Security" broadly to include, among other things, all collections ("Collections") and all accounts to which Collections in respect of any Purchased Receivable are deposited, including the Segregated Account. *Id.* at 9 (definition of "Related Security").

10. The ARPA further defines the "Segregated Account" as the account specified by RCA, as buyer, "in which any and all Collections shall be deposited," *Id.* at 9 (definition of "Segregated Account"), *Id.* at 24 (§ 7.1.8).

11. The ARPA further confirms that the parties intended the transactions thereunder to constitute true sales of Purchased Receivables (as defined therein) and that no party intended the transactions to be characterized as a loan. *Id.* at 13 (§ 2.6.1).

12 . The ARPA also provides that RCA has the sole right to service, administer, and collect Purchased Receivables; that Railhead's books and records would reflect a sale; that Railhead would not claim ownership of Purchased Receivables or their proceeds; and that Railhead would not give contrary payment instructions to account debtors. *Id.* at 16 (§§ 5.2–5.3.1), 29 (§ 8.1.4), 32 (§ 8.2.8).

13. The ARPA also contemplates financing statements as may be necessary or

desirable to perfect Buyer's ownership interest in Receivables assigned thereunder. *Id*. at 17 (§ 6.1.4). Consistent therewith, RCA filed UCC-1 financing statements against Railhead on September 18, 2018.

14. Under Virginia Code § 8.9A-318(a), debtor that has sold an account does not retain a legal or equitable interest in the collateral sold.

15. In addition, section 2.6.2 of the ARPA grants RCA a back-up security interest in all of Railhead's right, title, and interest in all Purchased Receivables sold by Railhead, and that security interest secures "any and all rights of, and payments owed to, Buyer under this Agreement," whether now or hereafter existing or arising, due or to become due, direct or indirect, absolute or contingent. *Id*. at 13 (§ 2.6.2).

16. Railhead, per the ARPA, sold twelve invoices to RCA with an aggregate face amount of $1,397,537.33, and RCA advanced approximately 85% of that amount at the time of sale. RCA received a partial payment on Invoice No. SINV000528 on or about October 6, 2025, in the amount of $162,022.09, but has received no other payments.

17. The total outstanding amount of the purchased invoices after credit for one partial payment is at minimum $1,235,515.24. *See* **Exhibit B** (Railhead Invoices Summary Chart). True and correct copies of the invoices are further attached hereto as **Exhibits B-1 through B-12**.

18. Notwithstanding the ARPA's payment-direction and segregation requirements, certain account debtors remitted payments on Purchased Receivables to Railhead and deposited to its M&T Bank account, rather than to the Segregated Account.

19. Neither Railhead, nor M&T Bank, has remitted the Purchased Receivables to RCA, totaling $1,235,515.24.

The Mutual Lien Release Agreement with M&T Bank
and Subordination Agreement with the SBA

20. On or about December 2, 2021, M&T Bank made a business loan to Railhead guaranteed by the United States Small Business Administration (the "SBA").

21. In the context of the SBA guaranteed loan made by M&T Bank to Railhead, Inc., and in order to induce RCA to continue to provide Railhead with the financial accommodations set out in the ARPA, M&T Bank agreed to and acknowledged that RCA's Purchased Receivables would be excluded from any collateral granted by Railhead to M&T Bank.

22. To memorialize this agreement, effective on December 2, 2021, RCA entered into a Mutual Lien Release Agreement (the "Mutual Lien Release Agreement") with M&T Bank and also a Subordination Agreement (the "Subordination Agreement") with the SBA. Copies of the Mutual Lien Release Agreement and the Subordination Agreement are attached as **Exhibits C and D**, respectively.

23. Paragraph 8 of the Mutual Lien Release Agreement further provides that if either M&T Bank or RCA receives or obtains collateral of the other signatory, it will be turned over as soon as is reasonably practicable. RCA has received no collateral of M&T Bank. *Id*. § 1.

24. RCA has not received or obtained any collateral belonging to M&T Bank.

25. Payments, which constitute RCA's Collateral, for invoices purchased by RCA from Railhead, Inc., have been deposited with M&T Bank, but not turned over to RCA. *Id*. § 8.

26. The Subordination Agreement likewise subordinates the SBA's lien position so that RCA may obtain a first-priority ownership interest in the Purchased Receivables and a first-priority security interest in the subordinated collateral. *See* Exhibit D (Subordination Agreement) at 1–2.

27. The amount of RCA's Purchased Receivables received and obtained by M&T Bank, and the amount due and owing to RCA from M&T Bank under the Mutual Lien Release Agreement, is at minimum $1,235,515.24.

28. RCA has made a demand to M&T Bank to turn over $1,235,515.24 constituting RCA's Purchased Receivables.

29. Notwithstanding M&T Bank's obligations under the Mutual Lien Release Agreement**,** M&T Bank has flatly refused to do so.

COUNT I
(Breach of Contract)

30. RCA incorporates the allegations contained in paragraphs 1 through 29 herein.

31. RCA entered into the Mutual Lien Release Agreement with M&T Bank, effective December 2, 2021.

32. The Mutual Lien Release Agreement requires M&T Bank to turn over to RCA any RCA Collateral it receives or obtains relative to Railhead's sale of receivables to RCA.

33. M&T Bank subsequently received and obtained $1,235,515.24 of RCA's Collateral in a deposit account maintained for Railhead.

34. M&T Bank breached the Mutual Lien Release Agreement by failing to turn over RCA's Collateral to RCA in the amount of $1,235,515.24.

35. Despite demand, M&T Bank has refused to turn over RCA's Collateral to RCA in the amount of $1,235,515.24.

36. As a result of M&T Bank's breach of the Mutual Lien Release Agreement, RCA has suffered damages in an amount not less than $1,235,515.24.

37. RCA's damages further include its costs and expenses, including reasonable

attorneys' fees incurred in bringing this action, pursuant to the Mutual Lien Release Agreement.

WHEREFORE, in light of the foregoing, Defendant M&T Bank owes, and Plaintiff RCA demands a judgment for, the amount of $1,235,515.24, plus pre-judgment interest and the costs of bringing this lawsuit, including reasonable attorneys' fees.

COUNT II
(Conversion)

38. RCA incorporates the allegations contained in paragraphs 1 through 37 herein.

39. RCA held an immediate, unconditional right to the specific, identifiable *res* of $1,235,515.24 in RCA's Collateral deposited in an account maintained by M&T Bank for Railhead.

40. M&T Bank intentionally interfered with $1,235,515.24 of RCA's Collateral by withholding and refusing to turn the funds over to RCA it in a manner that was unauthorized and inconsistent with RCA's ownership thereof.

41. M&T Bank's interference with RCA's Collateral constitutes conversion.

42. As a result of M&T Banks's conversion, RCA has suffered damages in an amount not less than $1,235,515.24.

43. RCA's damages further include pre-judgment interest and its costs incurred in bringing this action pursuant to the Mutual Lien Release Agreement.

WHEREFORE, in light of the foregoing, Defendant M&T Bank owes, and Plaintiff RCA demands a judgment for, the amount of $1,235,515.24, plus pre-judgment interest and the costs of bringing this lawsuit.

RESPECTFULLY SUBMITTED,

/s/ Craig M. Palik
Craig M. Palik, Esq. (VSB# 45728)
Janet M. Nesse, Esq. (VSB# 25884)
McNamee Hosea. P.A.
6404 Ivy Lane, Suite 820
Greenbelt, Maryland 20770
(301) 441-2420 (P)
(301) 982-9450 (F)
CPalik@MHLawyers.com

*Counsel to Republic Capital Access, LLC*